**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION**

| | |
|---|---|
| MEDITECH DEVELOPMENT, INC., <br><br>        Plaintiff, <br><br>  v. <br><br>SOLVENTUM CORPORATION and <br>3M COMPANY, <br><br>        Defendants. | Civil Action No. 7:26-cv-00111 <br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Meditech Development, Inc. ("Meditech") for its Complaint against Defendants Solventum Corporation ("Solventum") and 3M Company ("3M") (collectively, "Defendants"), alleges as follows.

## NATURE OF THE ACTION

1. This is a civil action for patent infringement (hereinafter, "the Action"), brought under the patent laws of the United States, 35 U.S.C. §§ 100 *et seq*., seeking damages and other relief arising out of Defendants' infringement of United States Patent Nos. 9,138,216 ("'216 Patent") and 9,186,444 ("'444 Patent") (collectively, "the Asserted Patents").

## PARTIES

2. Meditech is a California corporation, with its principal place of business in Yorba Linda, California.

3. Meditech is the true and correct owner of the Asserted Patents and holds all rights necessary to bring this Action. Meditech's founder and CEO, Dr. Neal M. Lonky, MD, MPH is an inventor of the Asserted Patents.

4.     On information and belief, Solventum is a Delaware corporation, with its principal place of business at 1750 Yankee Doodle Road, Eagan, MN 55121. Solventum has a regular and established place of business in this District at 12930 W. Interstate 10, San Antonio, TX 78249-2248. Solventum may be served with process through its registered agent Corporation Service Company, 251 Little Falls Drive, Wilmington, DE, 19808.

5.     On information and belief, 3M is a Delaware corporation, with its principal place of business at 3M Center, Building 25-1S-23, 2501 Hudson Road, St. Paul, Minnesota 55144-1000. On information and belief, 3M completed a planned spin-off of its health care business on or about April 1, 2024, formally launching Solventum as an independent company.

6.     3M has a regular and established place of business in this District at 13011 McCallen Pass, Building C, Austin, TX, 78753.

7.     According to the records of the Texas Secretary of State's website, 3M may be served with process through its registered agent Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th St., Suite 620, Austin, TX 78701-3136.

## JURISDICTION AND VENUE

8.     This Action arises under 35 U.S.C. §§ 100, *et seq.*, and this Court has jurisdiction over the subject matter of this Action under 28 U.S.C. §§ 1331 and 1338(a).

9.     Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400(b). Defendants have regular and established places of business in this District and at least some of Defendants' infringement of the Asserted Patents occurred and continues to occur in this District.

10.     Defendants are subject to this Court's specific and general personal jurisdiction pursuant to due process, due at least to their substantial business in this District, including: (i) at least a portion of the infringements alleged herein; (ii) purposefully and voluntarily placing one or

2

more infringing products into the stream of commerce with the expectation that they will be purchased by consumers in this District; and (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in this District.

11.    Defendants have committed acts within this District giving rise to this Action and have established minimum contacts with this District such that the exercise of jurisdiction over them would not offend traditional notions of fair play and substantial justice. Defendants directly and through subsidiaries or intermediaries, have conducted business and committed, and Solventum continues to commit, acts of infringement in this District by, among other things, making, using, importing, offering to sell, and selling products and providing services that infringe the Asserted Patents in this District.

12.    Additionally, Defendants are registered to do business in the State of Texas, have offices and facilities in this District, actively post job listings for positions in this District, and actively direct their activities to customers located in this District.

13.    Venue is proper in this District pursuant to 28 U.S.C. § 1400(b) because Solventum has a regular and established physical presence in this District, including its primary office for advanced wound care operations located at 12930 W. Interstate 10, San Antonio, TX 78249-2248. The business conducted at this location is steady, uniform, orderly, and/or methodical, and is settled and not transient, including, but not limited to, distribution, sales, and/or offers for sale of Negative Pressure Wound Therapy ("NPWT") systems that infringe the Asserted Patents, including but not limited to Defendants' V.A.C. Therapy and V.A.C. VeraFlo NPWT systems.

14.    On information and belief, at its San Antonio office, Solventum employs wound care sales representatives, customer support specialists, and field service agents who participate in

3

acts that infringe the Asserted Patents, including but not limited to the maintenance, delivery, testing, sale, offer for sale, and use of Solventum's NPWT systems.

15.     On information and belief, 3M has a regular and established physical presence in this District, including 3M's research and development (R&D) and corporate business support center located at 13011 McCallen Pass, Building C, Austin, TX, 78753. At times relevant to this Action, 3M employed wound care sales representatives, customer support specialists, and field service agents who also participated in acts that infringed the Asserted Patents, including but not limited to the maintenance, delivery, testing, sale, offer for sale, and use of 3M's NPWT systems.

16.     Additionally, Defendants have knowingly induced, and Solventum continues to knowingly induce, infringement within this District by advertising, marketing, offering for sale, and/or selling infringing NPWT systems to customers, manufacturers, distributors, resellers, partners, and/or end users, and providing instructions, user manuals, advertising, and/or marketing materials that facilitate, direct, or encourage the use of the infringing NPWT systems with knowledge thereof.

## THE ASSERTED PATENTS

17.     Meditech owns all rights, title, and interest, including the right to recover damages for past, present, and future infringement, in the '216 Patent, titled "Portable Regulated Vacuum Pump for Medical Procedures." The '216 Patent was duly and legally issued by the United States Patent & Trademark Office on September 22, 2015. A true and correct copy of the '216 Patent is attached as Exhibit A.

18.     Meditech owns all rights, title, and interest, including the right to recover damages for past, present, and future infringement, in the '444 Patent, titled "Portable Regulated Pressure Devices for Medical Procedures." The '444 Patent was duly and legally issued by the United States

4

Patent & Trademark Office on November 17, 2015. A true and correct copy of the '444 Patent is attached as Exhibit B.

## THE ACCUSED PRODUCTS AND INFRINGING ACTIVITIES

19.    Defendants, without Meditech's authority, made, used, offered to sell, sold, imported into the United States, and/or instructed others regarding the making, use, offer for sale, or importation into the United States, of certain NPWT systems that meet the claims in the Asserted Patents. These systems include but are not limited to NPWT pump units, wound dressings, tubing, and parts, accessories, and consumables for use with the foregoing, that directly infringe (literally and/or under the doctrine of equivalents), induce, and/or contribute to the infringement of one or more claims of each of the Asserted Patents.

20.    Solventum, without Meditech's authority, continues to make, use, offer to sell, sell, import into the United States, and/or instruct others regarding the making, use, sale, offer for sale, or importation into the United States, of certain NPWT systems that meet the claims in the Asserted Patents. These systems include but are not limited to NPWT pump units, wound dressings, tubing, and parts, accessories, and consumables for use with the foregoing, that directly infringe (literally and/or under the doctrine of equivalents), induce, and/or contribute to the infringement of one or more claims of each of the Asserted Patents.

21.    Specifically, Defendants offered—and Solventum continues to offer—integrated NPWT systems, including V.A.C.® Therapy, Veraflo™ Therapy, Prevena™ Therapy, and AbThera™ Therapy, that utilize a V.A.C. Ulta or V.A.C. Ulta 4 NPWT unit, wound dressings (sold as a kit and separately), topical wound solutions (specifically for Veraflo Therapy), SensaT.R.A.C.™, VeraT.R.A.C.™, and/or VeraT.R.A.C. Duo™ tubing (sold as a kit and

separately), and components of each of the foregoing, that infringe the Asserted Patents. (collectively, the "Accused Products").[1]

22.    Defendants' infringing activities and/or the Accused Products, and all reasonably similar products, violate one or more subsections of 35 U.S.C. §§ 271(a), (b), and (c).

23.    As noted below, each element of at least one claim of each Asserted Patent is literally present in the Accused Products and/or the methods performed by those products. To the extent that any element is not literally present or practiced, each such element is present under the doctrine of equivalents because the Accused Products perform substantially the same function in substantially the same way to achieve substantially the same result, and any differences between the Accused Products and such claim element are insubstantial.

24.    The allegations provided below are exemplary and without prejudice to infringement contentions provided pursuant to the Court's scheduling order and local rules. By providing these allegations, Meditech does not convey or imply any particular claim constructions or the precise scope of the claims. Meditech's claim construction contentions will be provided under the Court's scheduling order and local rules.

25.    The below infringement allegations are based on currently available information and a reasonable investigation of the structure and operation of the Accused Products. Meditech reserves the right to modify this description based on information it obtains during discovery about the Accused Products.

---

[1] *See generally* "Negative Pressure Wound Therapy (NPWT) Overview." npwt-overview-with-pnp-a3-rgb-ms-npwt-en-emea-uki.pdf.

## DEFENDANTS' KNOWLEDGE OF INFRINGEMENT

26.    Meditech has complied with 35 U.S.C. § 287, at least because Defendants have knowledge of the Asserted Patents and notice of their infringement thereof.

27.    At the latest, Defendants had notice of their infringement of the Asserted Patents on or about March 25, 2026, when Meditech sent a letter to Defendants informing them of their infringement.

28.    At least as early as 2020, Meditech had discussions with 3M employees about the Asserted Patents and their applicability to the Accused Products. On information and belief, Defendants learned of their infringement of the Asserted Patents in 2020 or were willfully blind to the possibility that they infringed the Asserted Patents.

29.    Additionally, Defendants became aware of the Asserted Patents and their infringement of them at least through the filing and service of this Complaint.

30.    Despite Defendants' knowledge of the Asserted Patents and notice of their infringement thereof, Defendants continued to engage in their infringing activities within this district and throughout the United States.

## COUNT 1

### (Infringement of the '216 Patent)

31.    Meditech repeats and re-alleges all the allegations above as if fully set forth herein.

32.    The claims of the '216 Patent are valid and enforceable.

33.    Defendants have infringed, and Solventum continues to infringe, one or more claims of the '216 Patent by making, using, offering to sell, selling, and/or importing into the United States, Accused Products without authority in violation of 35 U.S.C. § 271(a). Defendants actively induced, and Solventum continues to induce, infringement of the '216 Patent without

7

authority in violation of 35 U.S.C. § 271(b). Defendants have also contributed to, and Solventum continues to contribute to, the infringement of the '216 Patent in violation of 35 U.S.C. § 271(c).

34.    Defendants have infringed, and Solventum continues to infringe, directly and indirectly, literally and under the doctrine of equivalents, at least claim 1 of the '216 Patent at least by making, using, offering to sell, importing, and/or selling the Accused Products, including but not limited to the V.A.C.® Therapy NPWT system.

35.    To the extent the preamble of claim 1 is limiting, the V.A.C.® Therapy NPWT system, including the V.A.C. Ulta NPWT therapy unit, is an integrated portable vacuum device that satisfies each of the limitations of at least claim 1 of the '216 Patent:



## V.A.C.® Ulta Therapy Unit

- **Device type:** Negative pressure wound therapy unit designed for acute care
- **Device use:** Primarily in-hospital use
- **Canister size:** 500 mL or 1,000 mL
- **Delivery options:** -25mmHg to -200mmHg in continuous or 3M™ Dynamic Pressure Control™ Therapy (intermittent) mode
- **Product size:** Weight: 3.5 kg Dimensions: 22 cm x 26 cm x 19 cm
- **Battery life:** Up to 6 hours

*See* https://www.solventum.com/en-us/home/f/b5005265197/.

36.    The V.A.C. Therapy NPWT system includes SensaT.R.A.C.™ tubing, which has a suction device including a rim adapted to attach to a tissue of a mammal upon application of a vacuum and remain attached to the tissue with maintenance of the vacuum.[2]

---

[2] *See* https://s7d9.scene7.com/is/content/mmmspinco/vac-therapy-competitive-br-us-70-2011-8288-1pdf.

37. The V.A.C. Therapy NPWT system has one or more sensors to determine one or more sensor parameters including the vacuum applied to the tissue. Among other infringing features, the V.A.C. Ulta therapy unit has sensors for monitoring the pressure of the vacuum applied to the wound and detecting leaks.[3]

38. The V.A.C. Ulta therapy unit has a touchscreen (i.e., an input device) that allows a practitioner to transfer one or more input parameters, including vacuum pressure, from the touchscreen to the V.A.C. Ulta therapy unit's vacuum pump.[4]

39. The V.A.C. Ulta therapy unit uses a valve to adjust and release the vacuum within the unit.

40. The V.A.C. Ulta therapy unit has memory settings for storing and retrieving device settings (i.e., operating parameters), including negative pressure settings. It also stores sensor parameters, such as leak alarm thresholds[5] and stores input parameters, including cycle rise time, target pressure, and therapy mode and intensity.[6]

41. The V.A.C. Ulta therapy unit has a processor programmed to regulate pressure of its pump to control the vacuum applied to the tissue based on at least the one or more operating parameters and the one or more input parameters. As noted above, the V.A.C. Ulta therapy unit is programmed to allow the user to activate and adjust vacuum pressure based on one or more user defined settings (i.e., input parameters) and one or more operating parameters, including target

---

[3] *See* multimedia.3m.com/mws/media/1939201O/3m-v-a-c-ulta-4-therapy-system-user-guide-poster.pdf.

[4] *See* 417282a-mnl-vaculta-1-5-user-web.pdf at 84.

[5] *See* 417282a-mnl-vaculta-1-5-user-web.pdf at 188.

[6] *See* 417282a-mnl-vaculta-1-5-user-web.pdf. at 83.

pressure, pressure intensity, blockage, and alerts. The programmable nature of those functions necessarily requires a processor.

42.     The V.A.C. Therapy NPWT system includes one or more mechanical pumps to apply and regulate both positive pressure and a vacuum to the suction device, where the suction device is adapted to be integrated with the one or more mechanical pumps without ancillary external connections to form the integrated portable vacuum device. Among other infringing features, the V.A.C. Ulta therapy unit includes an electronically controlled vacuum pump that regulates positive pressure and a vacuum to the SensaT.R.A.C. suction device.[7]

43.     The SensaT.R.A.C. suction device connects to the V.A.C. Ulta therapy unit's vacuum pump without any ancillary external connections. The combination of the SensaT.R.A.C. suction device with the V.A.C. Ulta therapy unit's vacuum pump forms an integrated portable vacuum device.[8]

44.     As demonstrated above, Defendants' V.A.C. Therapy NPWT system satisfies each and every limitation of exemplary claim 1. Consequently, Defendants directly infringe the '216 Patent through at least the manufacture, sale, offer for sale, use, and/or importation of the V.A.C. Therapy system, which is representative of the manner of infringement of all of Defendants' Accused Products and applies equally to all such products because all Accused Products infringe in the same general way.

45.     Additionally, on information and belief, Defendants knowingly and intentionally induced and/or contributed to, and Solventum knowingly and intentionally continues to induce

---

[7] *See* SensaT.R.A.C.™ Pad; 36695-HCBSP_70-2013-1106-8 ULTA Therapy System OR Poster - V.A.C. & Veraflo™ Therapies.indd at 1.

[8] *See* *417282a-mnl-vaculta-1-5-user-web.pdf.

and/or contribute to, infringement of the '216 Patent under 35 U.S.C. §§ 271(b) and (c), either literally or under the doctrine of equivalents. On information and belief, Defendants actively induced others (including their customers) to make, use, sell, offer to sell, or import one or more Accused Products, and reasonably similar products, such that the customers directly infringe the '216 Patent.

46.     For example, Defendants provided, and Solventum continues to provide, significant support and documentation, including promotional materials, product manuals, training materials, clinical guidelines, brochures, technical advice, videos, and website materials encouraging others (including their customers) to purchase the Accused Products and showing them how to use the Accused Products to directly infringe one or more claims of the '216 Patent. Further, Defendants have offered and sold, and Solventum continues to offer and sell, accessories and replacement parts for the Accused Products, further encouraging and aiding others to directly infringe this patent.

47.     Defendants knowingly encouraged and intended, and Solventum continues to knowingly encourage and intend, to induce infringement of the '216 Patent by making, using, offering for sale, and selling the Accused Products, and/or importing them into the United States, with knowledge of the '216 Patent and with knowledge and specific intention that such products would be used by customers, and that such use would necessarily result in infringement of the '216 Patent. Defendants had actual knowledge of the '216 Patent and that their actions would lead to infringement by customers and/or had knowledge of the foregoing by way of willful blindness to the existence of the '216 Patent and to the fact that their actions would lead to infringement by customers.

48.    Defendants also contributed to, and Solventum continues to contribute to, the infringement of the '216 Patent by making, using, selling, and/or offering to sell products in the United States, and/or importing them into the United States, including but not limited to the Accused Products with knowledge of the '216 Patent, knowing that those products constitute a material part of the claimed invention, that they are especially made or adapted for use in infringing the '216 Patent, and that they are not staple articles or commodities of commerce capable of substantial non-infringing use. Defendants had actual knowledge of the '216 Patent, and that their products constitute a material part of the invention and are especially made or adapted for use in infringing the invention, and that the products are not staple articles or commodities of commerce capable of substantial non-infringing use, and/or Defendants had knowledge of the foregoing by way of willful blindness to the existence of the '216 Patent, to the fact that their products constitute a material part of the invention and are especially made or adapted for use in infringing the invention, and to the fact that the products are not staple articles or commodities of commerce capable of substantial non-infringing use.

49.    Defendants' infringement of the '216 Patent has been and continues to be deliberate and willful, and therefore, this is an exceptional case warranting an award of enhanced damages and attorneys' fees pursuant to 35 U.S.C. §§ 284-285. Defendants had knowledge of the '216 Patent prior to the filing of this Action, including by way of willful blindness. And Defendants had actual knowledge of the '216 Patent at least with the filing of this Action. After acquiring that knowledge, Defendants infringed the '216 Patent, and in doing so, they knew, or should have known, that their conduct amounted to infringement of the '216 Patent. As a result of Defendants' infringement of the '216 Patent, Meditech has suffered monetary damages, and seeks recovery in

12

an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty with interest and costs.

## COUNT 2

### (Infringement of the '444 Patent)

50.     Meditech repeats and re-alleges all the allegations above as if fully set forth herein.

51.     The claims of the '444 Patent are valid and enforceable.

52.     Defendants have infringed, and Solventum continues to infringe, one or more claims of the '444 Patent by making, using, offering to sell, selling, and/or importing into the United States, Accused Products without authority in violation of 35 U.S.C. § 271(a). Defendants actively induced, and Solventum continues to induce, infringement of the '444 Patent without authority in violation of 35 U.S.C. § 271(b). Defendants have also contributed to, and Solventum continues to contribute to, the infringement of the '444 Patent in violation of 35 U.S.C. § 271(c).

53.     Defendants have infringed, and Solventum continues to infringe, directly and indirectly, literally and under the doctrine of equivalents, at least claim 18 of the '444 Patent at least by making, using, offering to sell, importing, and/or selling the Accused Products, including the Veraflo™ Therapy NPWT system.

54.     The Veraflo™ Therapy NPWT system combines V.A.C.® Therapy with "instillation therapy that automatically delivers topical wound solutions into the wound bed to facilitate removal of wound debris."[9] To the extent the preamble of claim 18 is limiting, the Veraflo™ Therapy NPWT system, which incorporates a V.A.C. Ulta and/or V.A.C. Ulta 4 NPWT

---

[9] *See* https://www.solventum.com/en-us/home/medical/advanced-wound-care/negative-pressure-wound-therapy/veraflo-therapy/.

therapy unit, is a device to adjust a vacuum applied to a tissue of a patient that satisfies each of the limitations of at least claim 18 of the '444 Patent. As noted in Defendant's marketing materials, the V.A.C. Ulta and V.A.C. Ulta 4 therapy units have vacuum settings for adjusting the vacuum pressure applied to a patient's tissue.[10]

55.     The Veraflo™ Therapy NPWT system incorporates SensaT.R.A.C.™, VeraT.R.A.C. ™, and/or VeraT.R.A.C. Duo™ tubing, which are suction devices with a plurality of compartments.[11] These accused suction devices are adapted to be attached to the tissue of a patient through at least one of their plurality of compartments.

56.     Further, each SensaT.R.A.C.™, VeraT.R.A.C., and VeraT.R.A.C. Duo™ suction device has a rim adapted to attach to a tissue of a mammal upon application of a vacuum and remain attached to the tissue with maintenance of the vacuum.[12]

57.     When the V.A.C. Ulta and V.A.C. Ulta 4 therapy units are in Veraflo Therapy mode, the suction device is adapted to deliver an agent to the tissue of the patient through at least one of the suction device's plurality of compartments.

58.     The V.A.C. Ulta and V.A.C. Ulta 4 therapy units have a vacuum sensor for monitoring a vacuum applied to the tissue of the patient. The sensor allows the V.A.C. Ulta and V.A.C. Ulta 4 therapy units to "identify leaks in real-time."[13]

---

[10] *See* https://multimedia.3m.com/mws/media/1909966O/417282a-mnl-vaculta-1-5-user-web.pdf at 83.

[11] *See* eIFU – Instructions For Use Information | Solventum at 20-21.

[12] *See* https://s7d9.scene7.com/is/content/mmmspinco/vac-therapy-competitive-br-us-70-2011-8288-1pdf.

[13] *See* https://www.solventum.com/en-us/home/f/b5005265197/.

59.     The V.A.C. Ulta and V.A.C. Ulta 4 therapy units also include a sensor for monitoring the patient, including a sensor for detecting "blockages at the wound site."[14]

60.     The V.A.C. Ulta and V.A.C. Ulta 4 therapy units include a pump for simultaneously supplying both positive pressure and negative pressure to one or more compartments in the SensaT.R.A.C.™, VeraT.R.A.C., and/or VeraT.R.A.C. Duo™ tubing.[15]

61.     The V.A.C. Ulta and V.A.C. Ulta 4 therapy units have an input device (i.e., a touchscreen) that allows a user to transfer one or more input parameters, including vacuum pressure, from the touchscreen to the vacuum pump.[16]

62.     The V.A.C. Ulta and V.A.C. Ulta 4 therapy units include a processor that activates and adjusts the pressure applied by the vacuum pump. As discussed above, these therapy units apply positive and negative pressure to a compartment in the SensaT.R.A.C.™, VeraT.R.A.C.™, and VeraT.R.A.C. Duo™ pads. The therapy unit can be programmed to attain and maintain a targeted vacuum pressure, which is a vacuum condition.

63.     The application of a vacuum between the SensaT.R.A.C., VeraT.R.A.C. and VeraT.R.A.C. Duo pads and the tissue of the patient forms a tamponade stopping fluid flow at the tissue of the patient.

---

[14] 417282a-mnl-vaculta-1-5-user-web.pdf at 95.

[15] *See Generally* SensaT.R.A.C.™ Pad.; 417282a-mnl-vaculta-1-5-user-web.pdf at 13; 36695-HCBSP_70-2013-1106-8 ULTA Therapy System OR Poster - V.A.C. & Veraflo™ Therapies.indd at 1; 417282a-mnl-vaculta-1-5-user-web.pdf at 38.

[16] *See* *417282a-mnl-vaculta-1-5-user-web.pdf at 84.

64.    The V.A.C. Ulta and V.A.C. Ulta 4 therapy units activate an instillation pump that applies positive pressure to deliver topical wound solutions to a compartment in the VeraT.R.A.C.™ and VeraT.R.A.C. Duo™ pads.

65.    The V.A.C. Ulta and V.A.C. Ulta 4 systems have a Seal Check leak detector (i.e., sensor) that monitors negative pressure leakages at the patient's wound before and during instillation of the agent. If the Seal Check leak detector senses no leak, the Veraflo Therapy NPWT system applies (i.e., increases) positive pressure to begin installation of the agent.[17]

66.    As demonstrated above, Defendants' Veraflo Therapy NPWT system satisfies each and every limitation of exemplary claim 18. Consequently, Defendants directly infringe the '444 Patent through at least the manufacture, sale, offer for sale, use, and/or importation of the V.A.C. Veraflow NPWT system, which is representative of the manner of infringement of all of Defendants' Accused Products and applies equally to all such products because all Accused Products infringe in the same general way.

67.    Additionally, on information and belief, Defendants knowingly and intentionally induced and/or contributed to, and Solventum knowingly and intentionally continues to induce and/or contribute to, infringement of the '444 Patent under 35 U.S.C. §§ 271(b) and (c), either literally or under the doctrine of equivalents. On information and belief, Defendants actively induced others (including their customers) to make, use, sell, offer to sell, or import one or more Accused Products, and reasonably similar products, such that the customers directly infringe the '444 Patent.

68.    For example, Defendants provided, and Solventum continues to provide, significant support and documentation, including promotional materials, product manuals, training materials,

---

[17] *See* 417282a-mnl-vaculta-1-5-user-web.pdf at 145.

16

clinical guidelines, brochures, technical advice, videos, and website materials encouraging others (including their customers) to purchase the Accused Products and showing them how to use the Accused Products to directly infringe one or more claims of the '444 Patent. Further, Defendants have offered and sold, and Solventum continues to offer and sell, accessories and replacement parts for the Accused Products, further encouraging and aiding others to directly infringe this patent.

69.    Defendants knowingly encouraged and intended, and Solventum continues to knowingly encourage and intend, to induce infringement of the '444 Patent by making, using, offering for sale, and selling the Accused Products, and/or importing them into the United States, with knowledge of the '444 Patent and with knowledge and specific intention that such products would be used by customers, and that such use would necessarily result in infringement of the '444 Patent. Defendants had actual knowledge of the '444 Patent and that their actions would lead to infringement by customers and/or had knowledge of the foregoing by way of willful blindness to the existence of the '444 Patent and to the fact that their actions would lead to infringement by customers.

70.    Defendants also contributed to, and Solventum continues to contribute to, the infringement of the '444 Patent by making, using, selling, and/or offering to sell products in the United States, and/or importing them into the United States, including but not limited to the Accused Products with knowledge of the '444 Patent, knowing that those products constitute a material part of the claimed invention, that they are especially made or adapted for use in infringing the '444 Patent, and that they are not staple articles or commodities of commerce capable of substantial non-infringing use. Defendants had actual knowledge of the '444 Patent, and that their products constitute a material part of the invention and are especially made or adapted for use in

17

infringing the invention, and that the products are not staple articles or commodities of commerce capable of substantial non-infringing use, and/or Defendants had knowledge of the foregoing by way of willful blindness to the existence of the '444 Patent, to the fact that their products constitute a material part of the invention and are especially made or adapted for use in infringing the invention, and to the fact that the products are not staple articles or commodities of commerce capable of substantial non-infringing use.

71.     Defendants' infringement of the '444 Patent has been and continues to be deliberate and willful, and therefore, this is an exceptional case warranting an award of enhanced damages and attorneys' fees pursuant to 35 U.S.C. §§ 284–285. Defendants had knowledge of the '444 Patent prior to the filing of this Action, including by way of willful blindness. And Defendants had actual knowledge of the '444 Patent at least with the filing of this Action. After acquiring that knowledge, Defendants infringed the '444 Patent, and in doing so, they knew, or should have known, that their conduct amounted to infringement of the '444 Patent.

72.     As a result of Defendants' infringement of the '444 Patent, Meditech has suffered monetary damages, and seeks recovery in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty with interest and costs.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Meditech prays for judgment and seeks relief against Defendants as follows:

A.      For judgment that Defendants have infringed and/or continue to infringe one or more claims of the Asserted Patents, directly, and/or indirectly by way of inducement or contributory infringement;

18

B.      For a preliminary and permanent injunction against Defendants, their respective officers, agents, servants, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest, and those persons in active concert or participation with them, enjoining them from infringement, inducement of infringement, and contributory infringement of the Asserted Patents, including, but not limited to, an injunction against making, using, selling, and/or offering for sale within the United States, and importing into the United States, any products and/or services that infringe the Asserted Patents;

C.      For judgment awarding Meditech damages adequate to compensate it for Defendants' infringement of the Asserted Patents, including all pre-judgment and post-judgment interest;

D.      For judgment that Defendants have willfully infringed, and that Solventum continues to willfully infringe, one or more claims of the Asserted Patents;

E.      For judgment that Defendants have infringed in bad faith, and that Solventum continues to infringe, one or more claims of the Asserted Patents in bad faith;

F.      For judgment awarding enhanced damages pursuant to 35 U.S.C. § 284;

G.      For judgment imposing a mandatory future royalty payable on each and every product or service sold by Defendants in the future that is found to infringe the Asserted Patents and on all future products and services which are not colorably different from products found to infringe;

H.      For judgment awarding attorneys' fees pursuant to 35 U.S.C. § 285 or otherwise permitted by law;

I.      For judgment awarding Meditech costs of suit; and

19

J.      For judgment awarding Meditech such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Meditech hereby demands a trial by jury of all issues so triable.

DATED: March 26, 2026

Respectfully submitted,

By: */s/ Mark D. Siegmund*
Mark D. Siegmund
Texas Bar No. 24117055
**CHERRY JOHNSON SIEGMUND JAMES PC**
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
Tel: (254) 732-2242
Fax: (866) 627-3509
msiegmund@cjsjlaw.com

Thomas G. Southard (*pro hac vice* application forthcoming)
**TAFT STETTINIUS & HOLLISTER LLP**
1333 New Hampshire Ave., NW, Suite 800
Washington, D.C. 20036
Tele: (202) 664-1544
Fax: (202) 408-5146
tsouthard@taftlaw.com

*Attorneys for Meditech Development, Inc.*